FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 11 2010

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk



Herman & Russo, P.C.
225 Creekstone Ridge
Woodstock, GA 30188
Telephone (678) 925-3510
Facsimile (678) 741-2697

Melissa A. Herman (Georgia Bar No. 348378)
David A. Russo (Georgia Bar No. 621210)



## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| Melissa A. Herman, David A. Russo | * | |
| David A. Russo and | * | |
| Herman & Russo, P.C. | * | PLAINTIFFS' ORIGINAL COMPLAINT |
| Plaintiffs, | * | AND JURY DEMAND |
| | * | |
| v. | * | **1 10-CV-0398** |
| | * | |
| XCENTRIC VENTURES, LLC, and | * | |
| EDWARD MAGEDSON, and JOHN | * | |
| OR JANE DOE | * | |
| | * | |
| Defendants. | * | |

Plaintiffs Herman & Russo, P.C. ("HR Law"), Melissa A. Herman ("Herman"),

and David A. Russo ("Russo") file this Original Complaint and Jury Demand against Defendants

Xcentric Ventures, LLC ("Xcentric Ventures" or "Xcentric"), Edward Magedson ("Madgeson"),

and John or Jane Doe ("Doe") on personal knowledge as to all facts regarding themselves and

on information and belief as to all other matters, as follows:

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| Melissa A. Herman, David A. Russo | * | |
| David A. Russo and | * | |
| Herman & Russo, P.C. | * | PLAINTIFFS' ORIGINAL COMPLAINT |
| Plaintiffs, | * | AND JURY DEMAND |
| | * | |
| v. | * | |
| | * | |
| XCENTRIC VENTURES, LLC, and | * | |
| EDWARD MAGEDSON, and JOHN | * | |
| OR JANE DOE | * | |
| | * | |
| Defendants. | * | |

Plaintiffs Herman & Russo, P.C. ("HR Law"), Melissa A. Herman ("Herman"),

and David A. Russo ("Russo") file this Original Complaint and Jury Demand against Defendants

Xcentric Ventures, LLC ("Xcentric Ventures" or "Xcentric"), Edward Magedson ("Madgeson"),

and John or Jane Doe ("Doe") on personal knowledge as to all facts regarding themselves and

on information and belief as to all other matters, as follows:

# I.

## PRELIMINARY STATEMENT

Defendants Edward Magedson and Xcentric Ventures along with John or Jane Doe the authors of defamatory statements are in a relationship that profits from defamation. Defendants Magedson and Xcentric operate a website known as "Ripoff Report", which is located on the internet at http: //www.ripoffreport.com (the "Website"). Magedson and Xcentric profit from the Website by selling advertisements, books written by Magedson, and their "Corporate Advocacy Program", in which they offer to neutralize defamatory statements that appear on their own website for a fee.

Third parties can post comments, statements, and allegations on this Website about businesses and individuals who have allegedly "ripped them off". Magedson and Xcentric enhance these third party posts by adding their own original content to boost the defamatory nature of these posts. For example, for each post on their Website, third parties are prompted to create a title for their post that begins with the name of the post's targeted business or individual. Magedson and Xcentric add the words "Rip-off Report:" to the beginning of this title to create the hidden "title metatag"[i] for the post. This "title metatag" is located in the HTML (hyper text markup language) script that underlies each webpage containing a post of the Website. While adding this defamatory content to this hidden title metatag may seem harmless, in actuality, that defamatory title metatag is what internet search engines, such as Google, Yahoo, etc. display as results for internet searches. The highly charged words "Rip-Off Report:" followed by the name of the defamed target have the intended effect of shocking any person who conducts an internet search for any business or individual unfortunate enough to be the victim of such a report.

Defendant John or Jane Doe posted false, defamatory and misleading statements about Plaintiffs on the Website. Defendants Magedson and Xcentric added their own original content to these statements by, among other things, adding the phrase "Rip-Off Report:" to the title metatag of the specific webpage containing the defamatory statements. These actions have had the intended effect of publishing the statement "Rip-Off Report: Herman and Russo, Mellissa (Sic) A. Herman and David A. Russo" on Google and other search engines on the internet.

Shortly after the posting of these statements and their enhancement through the use of metatags to make them highly visible to anyone searching on Google, etc., concerned potential clients of Plaintiffs began to raise questions about the honesty and integrity of Plaintiffs, and new client appointments were almost non-existent. Plaintiffs Herman & Russo, P.C. and Melissa A. Herman and David A. Russo bring this action to enjoin Defendant's unlawful conduct of falsely defaming them as well as to be justly compensated for the damages they incurred.

## II.

## PARTIES

### A. Plaintiffs

1.      Plaintiff Herman & Russo, P.C. is a Georgia professional corporation with its principal place of business in Woodstock, Georgia. Herman & Russo, P.C. is a consumer bankruptcy law firm providing legal services to clients seeking to file for bankruptcy relief.

2.      Plaintiff Melissa A. Herman is a citizen of the State of Georgia. Melissa A. Herman is a partner with Herman & Russo, P.C. and is licensed to practice in both Louisiana and Georgia.

3.      Plaintiff David A. Russo is a citizen of the State of Georgia. David A. Russo is a partner with Herman & Russo, P.C.

## B. Defendants

4.      Defendant Xcentric Ventures, LLC is an Arizona limited liability company with its principal place of business in Arizona. Xcentric Ventures runs and operates the Website which is located at http://www.ripoffreport.com and http://badbusinessburau.com. Xcentric Ventures may be served through its registered agent, Maria Crimi Speth, Esq., at 3200 North Central Avenue, Suite 2000, Phoenix, Arizona 85012.

5.      Defendant Edward Magedson is an individual who, upon information and belief, is, and at all relevant times was the owner and/or operator of the Website. Magedson is also a "manager" of Xcentric Ventures. Upon information and belief, Mr. Magedson may be served at 1138 S. Rose, Mesa, Maricopa County, Arizona, 85204, and/or 2033 W. McDowell Boulvard, Apache Junction, Pima County, Arizona, 85220, and/or P.O. Box 310, Tempe, Maricopa County, Arizona, 85280.

6.      Defendant John or Jane Doe posted statements on the Website under the name "Justice Not Served". This Complaint shall be amended to substitute the name of the individual or businesses entity for John or Jane Doe in due course, upon identification of John or Jane Doe through discovery.

## III.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332 because there is complete diversity of citizenship and the matter in controversy, exclusive of costs and interests, exceeds the sum or value of seventy-five-thousand dollars ($75,000.00).

8.      This Court has personal jurisdiction over Xcentric ventures because it solicits and does business in Georgia and has substantial contacts with the State of Georgia.

9.      This Court has personal jurisdiction over Magedson because he solicits and does business in Georgia and has substantial contact with the State of Georgia.

10.     This Court has personal jurisdiction over John or Jane Doe because he/she/it has committed torts in part inside Georgia.

11.     Venue is proper in this District pursuant to 28 U.S.C. 1391(a) because Xcentric and Magedson solicit and do business in this district, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Georgia and this District, and Defendants have committed and continue to commit tortuous acts in the State of Georgia and this District.

## IV.

## FACTUAL BACKGROUND

### A. Herman &Russo, P.C. Melissa A. Herman, and David A. Russo

12.     Herman & Russo, P.C. was founded in 2008 to provide legal services in consumer bankruptcy for individuals seeking to file for bankruptcy relief. The firm officially opened on July 1, 2008.

13.     Melissa A. Herman is a board certified in consumer bankruptcy attorney who has practiced bankruptcy law for 14 years. She has taught numerous Continuing Legal Education (CLE) on the topic of consumer bankruptcy and authored articles on bankruptcy law.

14.     David A. Russo is an attorney with 15 years of experience in a variety of legal positions in both government and private practice.

15.     Herman & Russo, P.C.'s practice has been consistently successful in its provision of legal services since its inception, but has suffered significant damage to its reputation and a loss of potential revenue due to Defendant's unlawful conduct.

**B. Ripoff Report: Magedson and Xcentric**

16.     The Ripoff Report Website is an Internet forum that claims to be a place for consumers to post and review complaints about the businesses and individuals who allegedly "rip them off". Any internet user can log on to the Website and create a "report" about any business or individual.

17.     Magedson and Xcentric encourage and solicit third parties to submit reports to the Website.

18.     Magedson and Xcentric publish these reports on the Website without evaluation the validity of any of the information contained therein.

19.     Further, Magedson and Xcentric have a policy in which they steadfastly refuse to remove any report on the basis that it is false and defamatory. Additionally there is a lengthy section on the Website designed to dissuade any one from suing Magedson and/or Xcentric based on the claims that they have never lost a lawsuit and that they always force the loosing plaintiffs to pay their attorney fees as well as that such a proposition would be extremely expensive.

20.     Magedson and Xcentric profit from the Website by selling advertisements, key word advertisements, books written by Magedson, and their Corporate Advocacy Program.

21.     Magedson and Xcentric's advertising profits are substantial in that the Website receives millions of "hits" or visits each week.

22.    In the Corporate Advocacy Program, businesses or individuals that have been defamed

on the Website can hire Magedson and Xcentric to "investigate" the defamatory reports about

them and take steps to resolve or mitigate the problem. While Magedson and Xcentric will not

remove the defamatory posts, the will amend them to include any findings from Magedson that

the business or individual has excellent customer service and/or that the reports were false. These

amendments are made to the title of the defamatory post as well as preceding the body of the

report.

23.    Magedson and Xcentric do not allow any party, other than Magedson to make such

amendments.

24.    Businesses and Individuals that subscribe to the Corporate Advocacy Program must pay

Magedson and Xcentric an up-front fee as well as a monthly fees to maintain the Program's

protections.

## C. Magedson and Xcentric Create Their Own Original Defamatory Content On The Website.

25.    The Website is not a neutral or passive forum for third parties to publish their own

statements. Magedson and Xcentric combine their own original content with each report

authored by a third party.

26.    The Website operates in the following manner: An internet user logs on to the Website to

make a "report". The Website then provides prompts to the user to input certain information

about the business or individual that is the target of the report, such as name, address or website.

27.    The Website then prompts the user to create a title for their report. This title is split into

four parts: (1) the name of the business or individual that is the target, (2) descriptive words

explaining what the target did to the user, (3) the city where the target is located and (4) the state in which the target is located.

28.     The Website then prompts the user to categorize the report in one of several categories such as "corrupt companies", "con-artists" and "court judges"

29.     Once the information is submitted to the Website, Magedson and Xcentric provide their own original content to a webpage containing the report.

30.     Included in the items of original content, Magedson and Xcentric systematically input their own content into the "title metatag" of the particular webpage containing a report.

31.     Each webpage contains an HTML (hyper text markup language) script that is read by internet search engines such as Google, Yahoo, etc. The host of the webpage has exclusive control over the content of the HTML script. Among other content, the HTML script contains "metatags" that are designed for internet search engines to read.

32.     One such metatag is the "title metatag", which provides a title for the particular webpage. This title appears on the title bar of the internet browser program (such as Internet Explorer, Netscape, or Firefox). In addition, the title metatag appears as the name of each webpage that appears as a search result on internet search engines such as Google.

33.     Defendants Magedson and Xcentric create the title metatag for each webpage on the Website by adding the phrase "Rip-Off Report:" to the beginning of the title of the report given by the computer user who wrote the report. Every webpage on the Website containing a "report" has a title metatag that beings with "Rip-Off Report:"

34.    Magedson and Xcentric use the four-title submitted by the computer user to serve as the "description metatag" for the webpage. Similar to the title metatag, the description metatag appears in the HTML script for the webpage. This description metatag is displayed in the two lines of text beneath the title for each search result on search engines such as Google.

35.    Magedson and Xcentric also create "keyword metatags" for each web page which appear in the HTML scripts. These keyword metatags are not displayed on internet search engines, but are used by the search engines to determine what the webpage is about. On each webpage containing a report on the Website, Magedson and Xcentric and create the following keyword metatags, "rip-off", "ripoff" "rip off", the name of the target business/individual, and the chosen category. These metatags are systematically created by Defendants.

36. Further, Magedson and Xcentric created the name of the Website's domain, www.ripoffreport.com. This affiliation between the website name and the targeted business or individual is defamatory in that it creates the presumption that the business/individual is a rip off.

**D. Xcentric, Magedson and Doe Combine to Defame Plaintiffs**

37.    On or about February 11, 2009, John or Jane Doe logged on to the Website under the name "Justice not Served" from Atlanta, Georgia, and posted a report about Plaintiffs. For the body of the report, Doe specifically stated:

*This report is regarding an incompetent and fraudulent law firm called Herman and Russo run by Melissa A Herman and David A. Russo. Their office is located at the following address:*

*225 Creekstone Ridge*
*Woodstock, GA 30188*
*Phone: 678-681-2021*

*Web site: www.hermanrusso.com*

*Many of their victims also reside outside of Woodstock as we do.*

*In our 25 years of operating a <u>business</u>, we have never encountered such negligence in handling a legal matter. We've spoken with several other parties who had a very similar and damaging experience by retaining this firm. Beware.*

*In our company's case, he accepted $30k with the promise that he could handle our <u>debt</u> negotiation and then proceeded to give us the run around for months. After receiving our payment he consistently avoided our phone calls and attempts at contacting him. In the rare event we actually were able to get a hold of them, they lied to us and said that they were <u>working</u> on our files when in reality he was just letting our files sit around and accumulate dust.*

*This not only cost us an exorbitant amount of money but also got us in trouble by making us look bad to our clients. These guys are nothing short of being blatant criminals who hide behind their bar numbers while making their living purely by promising people services, stealing their money, and then never delivering on his promises.*

*Whatever you do, do not become another victim by falling prey to their scams and fraudulent claims. It is absolutely asinine that this "law firm could" still be licensed after all the people they've screwed over. If you don't want to be lied to, swindled and taken advantage of, stay away from these crooks at all costs!!*

*Justice not served*
*Atlanta, Georgia*
*U.S.A.*

38.     Following the Website's prompts, Doe provided the title for this report in the following

four parts: (1) Herman and Russo, (2) Melissa A. Herman and David Herman and Russo (3)

Melissa A. Herman and David A. Russo Incompetent Legal Service at Best (4) Blatant legal

malpractice Woodstock Georgia. These parts combine to create the report's title and are printed

in red font on the Website.

39.     Magedson and Xcentric then added their own original content to the report.

40.    Magedson and Xcentric added the words "Rip Off Report:" to the beginning of the four part title of Doe's report to create the title metatag of "Rip Off Report: Herman and Russo, Melissa A. Herman and David A. Russo, Herman and Russo, Melissa A. Herman and David A. Russo Incompetent Legal Service at Best Blatant Legal Malpractice Woodstock Georgia". Attached is Exhibit A is a printout of the HTML script of the page on the Website containing the report.

41.    Second, Defendants took the four-part title of the report written by Doe to create the description metatag. This metatag specifically states, "Herman And Russo, Mellissa A. Herman And David Herman And Russo, Mellissa A. Herman And David A. Russo Incompetent Legal Services at Best - Blatant Legal Malpractice Woodstock Georgia" and is displayed on the description metatag on the first page of Exhibit A.

42.    Third, Defendants created the keyword metatags for the report which are used by internet search engines to determine the subject of the webpage. In this case, Magedson and Xcentric created the following keyword metatags for the report about Plaintiffs, "rip-off, ripoff, rip off, Herman And Russo, Mellissa A. Herman And David A. Russo, Lawyers". This keyword metatag also appears on the first page of Exhibit A.

43.    Fourth, Defendants also created original content on the webpage itself in stylized letters, "….by consumers, for consumers", "Ripoff Report", and "Don't let them get away with it….let the truth be known!"

44.    Fifth, Defendants created the domain name of the Website-www.ripoffreport.com-which defames Plaintiffs as Defendants associated Plaintiffs with this domain name.

45.    Each of these statements of original content created by Magedson and Xcentric defames Plaintiffs.

46.    Taken together, Defendants combined efforts created the following webpage, which is located at http://www.ripoffreport.com/lawyers/herman-and-russo-mel/herman-and-russo-mellissa-a-w776a.htm. Attached is Exhibit B, which is a reproduction of the webpage.

47.    Further, Defendants' combined original defamatory content in the hidden title metatag and the description metatag for the report's webpage created the following defamatory statement in the form of a second search result for the term, "Melissa A. Herman" or "David A. Russo" on Google. Attached is Exhibit C which resembles this search result.

48.    These combined statements about Plaintiffs by Defendants are false, misleading, defamatory, and/or disparaging in that (1) Plaintiffs do not victimize or "rip-off" consumers, (2) Plaintiff's are not "trying to get away with it", (3) Plaintiffs do not engage in debt negotiation, (4) Plaintiffs did not accept $30, 000.00. (4) Plaintiffs are not blatant criminals, (5) Plaintiffs never had any contact with Defendants as a client or otherwise.

49.    The falsity of Defendants' defamatory statements is further shown by the fact that Plaintiffs have never engaged in the alleged type of service that is stated in the report.

50.    Defendants' defamatory statements besmirch Plaintiffs' competence, integrity and make accusations of criminal and unethical misconduct.

**E. The Damage Done to Plaintiff**

51.    Defendants' unlawful conduct has had the intended consequence of damaging Plaintiffs' reputations. Plaintiffs have spent considerable time, effort and energy building their personal and

professional reputations. When clients or prospective clients investigate Plaintiffs on the internet they are immediately presented with "Rip Off Report: Herman and Russo….", which is inflammatory and specifically intended to shock any reader.

52. Because Defendants unlawful defamatory statements about Plaintiffs impeach their honesty, integrity and make accusations of criminal behavior, Plaintiffs' reputations have been irreparably harmed and will continue to be irreparably harmed until such statements are removed.

53. Defendants' statements have had the effect of lowering Plaintiffs in the estimation of the community, deterring clients and potential clients from dealing with Plaintiffs and exposing Plaintiffs to personal and professional disrepute.

54. As a result of Defendants' defamatory statements, Plaintiffs have lost numerous potential clients and lost revenue.

55. The harm by Defendants' defamatory statements about Plaintiffs is exacerbated by the fact that Plaintiffs have no way of knowing who is exposed to and reads Defendants' defamatory statements.

V.

**CLAIMS**

Count One: Defamation/Libel

56. Plaintiffs reallege and incorporate by reference all proceeding paragraphs as fully set forth herein.

57.     The Statements regarding Herman & Russo, Melissa A. Herman and David A. Russo are false. The Statements pertain to Herman & Russo, Melissa A. Herman and David A. Russo by intentionally making false, misleading, disparaging and/or defamatory comments and allegations concerning Melissa A. Herman and David A. Russo's treatment of clients, business practices, ethics, and competence as attorneys.

58. Defendants publicly communicated false, misleading, disparaging, and/or defamatory comments and allegations to third parties by disseminating such comments and allegations via the Website on the Internet and by placing metatags on the Website designed to publicize those false statements.

59. Defendants have hosted and transmitted false, misleading, disparaging, and /or other defamatory comments and allegations to such third parties on the Website knowing the same were false or with a high degree of awareness that the same were probably false, or with a reckless disregard for the truth.

60. Defendants disseminated false, misleading, disparaging and/or defamatory comments and allegations with the intent to damage the business, goodwill and professional reputation of Herman & Russo, Melissa A. Herman and David A. Russo.

61. Defendants' false, misleading, disparaging and/or defamatory comments and allegations have caused general defamation damages to Plaintiffs by exposing them to contempt and ridicule by third parties receiving such comments and allegations.

62. Plaintiffs have also suffered financial loss resulting from the effect of Defendants' statements, relating to, among other things, lost clients.

63. Defendants acted maliciously by disseminating comments and allegations with wanton disregard for plaintiffs' rights, and with the intent to defame and injure Plaintiffs.

64. Defendants' conduct as alleged above caused special damages and will continue to cause special damages to Plaintiffs and will continue to cause special damages to Plaintiffs in the form of lost clients. Further, Defendants' publication of false, misleading, disparaging and/or defamatory words, statements, comments and allegations about Plaintiffs has played a substantial part in inducing others not to deal with Plaintiffs with the result that Plaintiffs have suffered special damages in the form of loss of clients. Defendants' conduct entitles Plaintiffs to injunctive relief.

65. Unless Defendants are restrained and enjoined, Defendants will continue to harm Plaintiffs irreparably, thereby further damaging Plaintiffs and impairing Plaintiffs' business reputation and activities. By reason of the foregoing, Plaintiffs have been injured in an amount not yet ascertained, and are entitled to monetary and equitable remedies.

66. Defendants' wrongful actions were committed with the requisite evil mind under Louisiana and /or Georgia law to warrant the imposition of punitive damages.

**Count two:  Defamation Per Se/Libel Per Se**

67. Plaintiffs reallage and incorporate by reference all preceding paragraphs as fully set forth herein.

68. Defendants' written statements in Count One were Defamation per se and/or libel per se because they expressly or implicitly accuse Plaintiffs of criminal conduct and/or by their very nature tend to injure Plaintiffs' personal and/or professional reputations.

69. The defamatory statements require no proof of falsity or fault because they were obviously h hurtful to Plaintiffs.

70. Defendants' false, misleading, disparaging and/or defamatory comments and allegations have caused general defamation damages to Plaintiffs by exposing them to contempt and ridicule by third parties receiving such comments and allegations.

71. Plaintiffs have also suffered financial loss resulting from the effect of Defendants' statements, relating to, among other things, lost clients.

72. Defendants' conduct as alleged above caused special damages and will continue to cause special damages to Plaintiffs and will continue to cause special damages to Plaintiffs in the form of lost clients. Further, Defendants' publication of false, misleading, disparaging and/or defamatory words, statements, comments and allegations about Plaintiffs has played a substantial part in inducing potential clients not to deal with Plaintiffs with the result that Plaintiffs have suffered special damages in the form of loss of clients. Defendants' conduct entitles Plaintiffs to Injunctive Relief.

73. Unless Defendants are restrained and enjoined, Defendants will continue to harm Plaintiffs irreparably, thereby further damaging Plaintiffs and impairing Plaintiffs' business reputation and activities. By reason of the foregoing, Plaintiffs have been injured in an amount not yet ascertained, and are entitled to monetary and equitable remedies.

74. Defendants' wrongful actions were committed with the requisite evil mind under Louisiana and /or Georgia law to warrant the imposition of punitive damages.

75.     Plaintiffs reallege and incorporate by reference all proceeding paragraphs as fully set forth herein.

76.     Defendants published statements by written communication to third parties about the products and services of Plaintiffs.

77.     The Statements regarding Herman & Russo, Melissa A. Herman and David A. Russo are false. The Statements pertain to Herman & Russo, Melissa A. Herman and David A. Russo by intentionally making false, misleading, disparaging and/or defamatory comments and allegations concerning Melissa A. Herman and David A. Russo's treatment of clients, business practices, ethics, and competence as attorneys.

78.  Defendants publicly communicated false, misleading, disparaging, and/or defamatory comments and allegations to third parties by disseminating such comments and allegations via the Website on the Internet and by placing metatags on the Website designed to publicize those false statements.

79.  Defendants have hosted and transmitted false, misleading, disparaging, and /or other defamatory comments and allegations to such third parties on the Website knowing the same were false or with a high degree of awareness that the same were probably false, or with a reckless disregard for the truth.

80.  Defendants disseminated false, misleading, disparaging and/or defamatory comments and allegations with the intent to damage the business, goodwill and professional reputation of Plaintiffs.

81. Plaintiffs have also suffered pecuniary loss resulting from the effect of Defendants' statements, relating to, among other things, lost clients.

82. Defendants acted maliciously by disseminating comments and allegations with wanton disregard for Plaintiffs' rights, and with the intent to disparage the service Plaintiffs' provide to their clients.

83. Defendants' conduct as alleged above caused special damages and will continue to cause special damages to Plaintiffs and will continue to cause special damages to Plaintiffs in the form of lost clients. Further, Defendants' publication of false, misleading, disparaging and/or defamatory words, statements, comments and allegations about Plaintiffs has played a substantial part in inducing others not to deal with Plaintiffs with the result that Plaintiffs have suffered special damages in the form of loss of clients. Defendants' conduct entitles Plaintiffs to injunctive relief.

84. Unless Defendants are restrained and enjoined, Defendants will continue to harm Plaintiffs irreparably, thereby further damaging Plaintiffs and impairing Plaintiffs' business reputation and activities. By reason of the foregoing, Plaintiffs have been injured in an amount not yet ascertained, and are entitled to monetary and equitable remedies.

85. Defendants' wrongful actions were committed with the requisite evil mind under Louisiana and /or Georgia law to warrant the imposition of punitive damages.

**Count four: False Light**

86. Plaintiffs reallage and incorporate by reference all preceding paragraphs as fully set forth herein.

87. Defendants' statements and actions have placed Plaintiffs in a false light.

88. The false light in which Plaintiffs have been placed as a result of Defendants' statements and actions would be highly offensive to a reasonable person.

89. Defendants knew that the statements and impressions created by their actions were false, or Defendants acted in reckless disregard for the truth or falsity of those statements and impressions.

90. As a direct and proximate result of Defendants' wrongful statements and actions, Plaintiffs have been damaged in an amount to be proven at trial.

91. Defendants' conduct as alleged above caused special damages and will continue to cause special damages to Plaintiffs and will continue to cause special damages to Plaintiffs in the form of lost clients. Further, the false light in which Plaintiffs have been placed as a result of Defendants' statements and actions has played a substantial part in inducing others not to deal with Plaintiffs with the result that Plaintiffs have suffered special damages in the form of loss of clients. Defendants' conduct entitles Plaintiffs to injunctive relief.

92. Unless Defendants are restrained and enjoined, Defendants will continue to harm Plaintiffs irreparably, thereby further damaging Plaintiffs and impairing Plaintiffs' business reputation and activities. By reason of the foregoing, Plaintiffs have been injured in an amount not yet ascertained, and are entitled to monetary and equitable remedies.

93. Defendants' wrongful actions were committed with the requisite evil mind under Georgia and/or Louisiana law to warrant the imposition of punitive damages.

**Count Five: Tortious Interference with Contract and Other Business Expectancies**

94. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as fully set forth herein.

95. Plaintiffs had and continue to have valuable contracts and business expectancies with their clients and potential clients.

96. Defendants knew, when falsely and publicly making defamatory statements about Plaintiffs that Plaintiffs had these valuable contracts and business expectancies.

97. Defendants intended or knew with a substantial certainly that their actions would adversely affect Plaintiffs' relationships with their clients.

98. Defendants motive and means in interfering with Plaintiffs' valuable contracts and other business expectancies were improper.

99. Defendants' wrongful actions caused Plaintiffs to suffer damages in an amount to be proven at trial.

100. Defendants' conduct as alleged above caused special damages and will continue to cause special damages to Plaintiffs and will continue to cause special damages to Plaintiffs in the form of lost clients. Further, Defendants' publication of false, misleading, disparaging, and/or other defamatory words, statements, comments, and allegations about Plaintiffs and their services have has played a substantial part in inducing others not to deal with Plaintiffs with the result that Plaintiffs have suffered special damages in the form of loss of clients. Defendants' conduct entitles Plaintiffs to injunctive relief.

101. Unless Defendants are restrained and enjoined, Defendants will continue to harm Plaintiffs irreparably, thereby further damaging Plaintiffs and impairing Plaintiffs' business reputation and

activities. By reason of the foregoing, Plaintiffs have been injured in an amount not yet ascertained, and are entitled to monetary and equitable remedies.

102. Defendants' wrongful actions were committed with the requisite evil mind under Georgia and/or Louisiana law to warrant the imposition of punitive damages.

**Count Six: Misappropriation on Name or Likeness**

103. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as fully set forth herein.

104. Defendants utilized Plaintiffs' names and reputations as beacons in searching to maximize exposure for the Website and therefore maximize damage to Plaintiffs.

105. Defendants violated Plaintiffs' rights by soliciting defamatory content; requiring that complainants create a "title" which must contain Plaintiffs' names, encouraging the anonymity of complainants; directly encouraging the use of hyperbole and exaggeration in the title and body of the complaint both to maximize the impact and marketability of the false report- and therefore maximize the damage; by maintaining the reports with no means of removal or amelioration without paying large sums of money to Defendants; and by vigorously stating their position about zealously fighting lawsuits by victims of reports, and giving partial and therefore, misleading explanation of one's rights under the Communication Decency Act, so as to give the appearance that seeking one's legal remedies will not be cost-effective and encouraging victims to "pay up" to the Corporate Advocacy Program."

106. Plaintiffs have expended a great deal of time, effort, money and other resources to develop their practice, including establishing their name, logo, goodwill and name recognition in the

relevant marketplace. Such efforts have also included building an Internet presence directly and indirectly, advertising in phone books, developing and executing a direct marketing plan, teaching at Continuing Legal Education seminars, and joining consumer bankruptcy attorney groups and local bar associations.

107. Defendants Xcentric and Magedson, through the Website, intentionally infringed on the right of control Plaintiffs have over their name by hijacking their names' prosperity to obtain leverage against plaintiffs.

108. Defendants specifically used Plaintiffs' names in their marketing to Internet search engines such as Google, in order to maximize the "hits" on the Website.

109. Defendants outright encourage the use of hyperbole and exaggeration in the title and body of complaints both to maximize the impact and marketability of the false reports and therefore maximize the injury and damage to Plaintiffs. Yet, at the same time, Defendants instruct posters not to put any identifying information such as a name or email address.

110. The more a victim's name is searched on the Internet search engines, the greater the opportunity for damage and injury. Defendants' deceptive, false, malicious and defamatory reports further entrench themselves on Internet search engines the longer they remain, making it increasingly difficult and expensive for Plaintiffs to counteract the negative publicity currently or in the future.

111. Defendants rely on the fear induced by such activity to extract money or other valuable consideration in exchange for Defendants' promise to ameliorate the effects and impact of the false statements.

112. Plaintiffs refused to accede to Defendants' extortionate demands.

113. Defendants derive substantial sums of money from this misuse of Plaintiffs' name through "pay per click" advertising and other advertising on the Website which are made more profitable as more and more visitors come to the Website.

114. Defendants' "Corporate Advocacy Program" is nothing more than a scheme to ransom a person's good name back to them. It holds itself out as involving an "investigation" into the claims made against the victim, but is really just a way to make money. Independent proof supplied by the victim of false statements on the Website is neither acceptable nor sufficient for Defendants if their extortionate fees are not paid.

115. Defendants acted intentionally, purposefully, knowingly and recklessly in creating these various unauthorized uses of Plaintiffs' name or likenesses.

116. As a direct and proximate intended result of the forgoing wrongful conduct, Plaintiffs have been damaged, suffering loss of goodwill and diminution of value of their business interests, have lost business and will continue to lose business in the future and continue to suffer mounting damages. Such conduct severely impairs Plaintiffs' abilities to run for public office or obtain teaching positions. Such conduct also severely impairs Plaintiffs' ability to open a satellite branch in Plaintiff's hometown of New Orleans.

117. Unless Defendants are restrained and enjoined, Defendants will continue to harm Plaintiffs irreparably, thereby further damaging Plaintiffs and impairing Plaintiffs' business reputation and activities. By reason of the foregoing, Plaintiffs have been injured in an amount not yet ascertained, and are entitled to injunctive relief and damages.

118. Defendants' wrongful actions were committed with the requisite evil mind under Georgia and/or Louisiana law to warrant the imposition of punitive damages.

VI.

## APPLICATION FOR PERMANENT INJUNCTION

119. Plaintiffs reallege and incorporate by reference all preceding paragraphs as fully set forth herein.

120. Plaintiffs further ask the Court to set its application for injunctive relief for a full hearing on the issue in this application, and to issue a permanent injunction against Defendants from disseminating, using, or publishing false, misleading, disparaging, and/or defamatory words and comments concerning Plaintiffs.

VII.

## JURY DEMAND

121. Plaintiffs hereby request a jury trial on all matters so triable under the Constitution, laws, or statutes of the United States and the States of Georgia and/or Louisiana.

VIII.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs demand that judgment be entered against Defendants as follows:

(1)    That pursuant to federal and state law (Georgia and/or Louisiana) the Court issue

permanent injunctive relief that Defendants, their officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, be enjoined and restrained, during the pendency of this action and permanently from disseminating, using, or publishing false, misleading, disparaging and/or defamatory words and comments concerning either Melissa A. Herman, David A. Russo, and Herman and Russo, P.C., and their services, reputation or legal services.

(2)    That Defendants be required to remove from the website the false, misleading, disparaging, and/or defamatory words and comments regarding either Melissa A. Herman, David A. Russo, or Herman & Russo, P. C., including but not limited to the webpage located at http://www.ripoffreport.com/lawyers/herman-and-russo-mel/herman-and-russo-melissa-a-w776a.htm

(3)    That Defendants be enjoined from posting any further comments and statements regarding Plaintiffs on the website without Plaintiffs having the opportunity to first respond to the alleged author privately;

(4)    That Defendants be required to contact and notify any and all Internet business directory providers and Internet search engines to terminate all associations, if any, between Defendants and Plaintiff and that all cached pages being kept by any Internet search engine be terminated as well;

(5)    That Plaintiffs recover all damages they have sustained in an amount to be determined at trial;

(6)    That Plaintiffs recover compensatory damages in an amount to be determined at trial;

(7)     That Defendants be required to disgorge all profits and other ill-gotten gains in an amount to be determined at trial;

(8)     That Plaintiffs be awarded punitive damages in an amount to be determined at trial;

(9)     That Defendants be required to pay any reasonable attorney fees, costs, and expenses incurred by Plaintiffs in connection with this action; and

(10)    That Plaintiffs be entitled to such other relief as this Court deems just and equitable.

RESPECTFULLY SUBMITTED this 11TH day of February, 2010.

Herman & Russo, P.C.

/s/

Melissa A. Herman #348378 Pro se
David A. Russo #621210 Pro Se and
Attorney for Herman & Russo, P.C.

225 Creekstone Ridge
Woodstock, GA 30188
678-925-3510
678-741-2697 (fax)
hermanrusso@gmail.com

---

[i] A meta tag is a tag (that is, a coding statement) in the Hypertext Markup Language (HTML) that describes some aspect of the contents of a Web page. The information that you provide in a meta tag is used by search engines to index a page so that someone searching for the kind of information the page contains will be able to find it. The meta tag is placed near the top of the HTML in a Web page as part of the heading.

There are several kinds of meta tags, but the most important for search engine indexing are the *keywords* meta tag and the *description* meta tag. The keywords meta tag lists the words or phrases that best describe the contents of the page. The description meta tag includes a brief one- or two-sentence description of the page. Both the keywords and the description are used by search engines in adding a page to their index. Some search engines also use the description to show the searcher a summary of the page's contents.

Although most search engines also use the contents of a page as a way to determine how to index it, the creator of a Web page should be sure to include meta tags with appropriate keywords and description. Well-written meta tags can help make the page rank higher in search results.